**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JANE DOE**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 21-4909 |
| | ) | |
| **BOARD OF EDUCATION OF GLENBARD** | ) | |
| **TOWNSHIP HIGH SCHOOL DISTRICT 87**; | ) | |
| **PETER MONAGHAN**, in his individual and | ) | |
| official capacity; **DAVID LARSON**, in his | ) | |
| individual and official capacity; **MICHAEL** | ) | **PLAINTIFF DEMANDS** |
| **SOUZA,** in her individual and official capacity; | ) | **A JURY TRIAL** |
| **CHRISTOPHER MITCHELL**, in his individual | ) | |
| and official capacity; **AMANDA MEYER**, in her | ) | |
| individual and official capacity, **LISSETE** | ) | |
| **OCHOA**, in her individual and official capacity; | ) | |
| **ELIZABETH McGANN**, in her individual and | ) | |
| official capacity; and **ANDREW JEFFREY**, in | ) | |
| his individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW AND JURY DEMAND

NOW COMES the Plaintiff, JANE DOE, by and through her attorneys, Romanucci &

Blandin, LLC, and hereby files the following complaint against the Defendants and states as

follows:

### I. JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §

1331, which gives district courts jurisdiction over all civil actions arising under the Constitution,

laws and treaties of the United States.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which

gives district courts original jurisdiction over (a) any civil action authorized by law to be brought

1

by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, or any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3.      Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20. U.S.C. § 1681(a), as more fully set forth herein.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. PARTIES

5.      Plaintiff is a female and was at all material times under the age of majority.

6.      At all material times Plaintiff was a resident of the County of DuPage, State of Illinois.

7.      At the time of events complained of herein, Plaintiff was a student attending Glenbard West High School, a high school within the Defendant BOARD OF EDUCATION OF GLENBARD TOWNSHIP HIGH SCHOOL DISTRICT 87 ("the Board").

8.      The Defendant Board is the body politic providing regular education and related services to children who reside within district boundaries, and is located in the County of DuPage, State of Illinois.

9.      Defendant Board, at all material times, controlled and operated Glenbard West High School.

10.     At all material times, Defendant PETER MONAGHAN ("Principal Monaghan") was a resident of the County of DuPage, State of Illinois, employed by Defendant Board as the principal of Glenbard West High School.

11.     At all material times, Defendant DAVID LARSON ("Superintendent Larson") was a resident of the County of DuPage, State of Illinois, employed by Defendant Board as the superintendent of Defendant Board.

12.     During all material times, Superintendent Larson was an agent and/or employee of Defendant Board, acting or failing to act within the scope, course, and authority of his employment and his employer.

13.     At all material times, MICHAEL SOUZA ("Dean Souza") was a resident of the County of DuPage, State of Illinois, employed by Defendant Board as the dean of students at Glenbard West High School.

14.     During all material times, Dean Souza was an agent and/or employee of Defendant Board, acting or failing to act within the scope, course, and authority of his employment and his employer.

15.     At all material times, Defendant CHRISTOPHER MITCHELL ("Assistant Principal Mitchell"), was a resident of the County of DuPage, State of Illinois, employed by Defendant Board as the assistant principal for student services of Glenbard West High School.

16.     During all material times, Assistant Principal Mitchell was an agent and/or employee of Defendant Board, acting or failing to act within the scope, course, and authority of his employment and his employer.

17. At all material times, Defendant AMANDA MEYER ("Ms. Meyer") was a resident of the County of DuPage, State of Illinois, employed by Defendant School District as a school psychologist at Glenbard West High School.

18. During all material times, Ms. Meyer was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

19. At all material times, Defendant LISSETE OCHOA ("Ms. Ochoa"), was a resident of the County of DuPage, State of Illinois, employed by Defendant School District as a counselor at Glenbard West High School.

20. During all material times, Ms. Ochoa was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

21. At all material times, Defendant ELIZABETH McGANN ("Ms. McGann"), was a resident of the County of DuPage, State of Illinois, employed by Defendant School District as Director of Student Activities at Glenbard West High School.

22. During all material times, Ms. McGann was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

23. At all material times, Defendant ANDREW JEFFREY ("Mr. Jeffrey"), was a resident of the County of DuPage, State of Illinois, employed by Defendant School District as a choir teacher at Glenbard West High School.

24.     During all material times, Mr. Jeffrey was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

25.     At all material times, an individual known hereinafter as "J.A.," was a student attending Glenbard West High School.

### III. COMMON ALLEGATIONS

26.     At all material times, the Board was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

27.                     The Board implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's statutory Title IX and constitutional rights.

28.     The Board is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

29.     The Board is responsible for the acts and omissions of its employees.

30.     At the time of the attack that gave rise to the events complained of herein, Plaintiff was a minor child and a student at Glenbard West High School ("Glenbard West").

31.     On September 15, 2018, Plaintiff and J.A. attended a bonfire party attended by several other Glenbard West students.

32.     On and before September 15, 2018, Plaintiff and J.A. had been involved in a romantic relationship.

33.     Prior to September 15, 2018, J.A. had threatened Plaintiff with physical violence if she spoke to other male students at Glenbard West.

34.     While at the bonfire, J.A. pressured Plaintiff to take what he said was a Xanax pill to relax.

35.     Plaintiff did not want to take the Xanax but eventually did so at J.A.'s insistence.

36.     After taking the pill, Plaintiff began to experience the effects of the medication, including altered perception and periods of memory "blackout."

37.     At some point in the evening on September 15, 2018, Plaintiff and J.A. arrived at J.A.'s house.

38.     Plaintiff was awakened several hours later in the morning of September 16, 2018 with limited memory of the prior night.

39.     On that morning, Plaintiff received a video via the SnapChat messaging platform from J.A. that depicted J.A. sexually penetrating Plaintiff.

40.     Plaintiff had no memory of participating in any sexual activity from that night, nor consenting to any sexual activity.

41.     J.A. subsequently disseminated the video of the assault to several other students at Glenbard West.

42.     Plaintiff was extremely distressed by the video's dissemination and understood the video to constitute child pornography based on its contents and on her legal minority.

43.     A few days following the incident, Plaintiff notified Ms. Meyer of the assault and of the video and its dissemination during a counseling session.

44.     Meyer told Plaintiff that the event would "blow over," and indicated she would not report the incident.

45.     Meyer did not immediately report the incident, nor did she investigate Plaintiff's allegations of assault and harassment.

46. Approximately two weeks following the assault, after Plaintiff spoke to other Glenbard West students about the assault, J.A. sent Plaintiff a SnapChat message that read "So you're putting a rape charge on me."

47. That same day, Plaintiff received a text message from J.A. that said, "Yo listen never speak my name …I do not give to [sic] fucks about the deans I will stomp these kids [sic] throats."

48. Plaintiff understood this message to constitute a physical threat to herself and to other Glenbard West students to whom she had disclosed the assault.

49. Plaintiff notified her mother, hereinafter "Judy Doe," of the incident, and the two of them reported the incident to the Glen Ellyn Police Department.

50. On the following day, Judy Doe notified Dean Souza of the assault by J.A. and of J.A.'s subsequent dissemination of the video of the assault.

51. Dean Souza notified Board administrators of the assault and the dissemination of the video, including the Board, Larson, Monaghan, and Mitchell.

52. Following the disclosure of the assault and the video to the police and to Dean Souza, the harassment of Plaintiff began to escalate.

53. J.A. began to position himself in hallways and areas of Glenbard West that Plaintiff frequented for classes and extracurricular activities for the purpose of intimidating Plaintiff.

54. Only days following Judy Doe's initial report of assault and harassment to Dean Souza, Judy Doe reported to Dean Souza that J.A. was attempting to physically intimidate Plaintiff for reporting her assault and that Plaintiff felt unsafe at school.

55. Dean Souza reported this conversation to Defendants, including Principal Monaghan, Superintendent Larson, the Board, and Assistant Principal Mitchell.

56.     Plaintiff was frequently called by gendered and sexually-charged language, including "twat" and "whore" by other Glenbard West students, and was accused of having fabricated the assault.

57.     Plaintiff observed the phrase "[JANE DOE][1] is a whore" written in a bathroom stall within Glenbard West.

58.     Plaintiff promptly notified Dean Souza of this incident; Souza declined to review video camera footage taken from outside the restroom in question or otherwise investigate the identity of the writer.

59.     A fellow Glenbard West student, accompanied by J.A., followed Plaintiff in her car, and sent Plaintiff a video of her car in a parking lot with the caption "watch out."

60.     Plaintiff understood this video to be a threat to her physical safety and an indication that she was being watched and followed by J.A. and other Glenbard West students as a result of her report of assault.

61.     Another Glenbard West student told Plaintiff that they would throw a brick at Plaintiff's vehicle if she came to school.

62.     J.A. directly threatened Plaintiff and a friend to whom she had reported the assault, stating that he would beat them up.

63.     Plaintiff frequently overheard or became aware of other students in her classes mocking her and speaking derisively about her for reporting her assault.

64.     Plaintiff frequently received photos and videos from other Glenbard West students with J.A.; these videos often depicted the sender and J.A. mocking Plaintiff for reporting her assault and speaking about Plaintiff in derisive and sexualized terms.

---

[1] The graffiti in question included Plaintiff's true name, omitted in the instant Complaint to preserve Plaintiff's privacy.

65. A Glenbard West student sent Plaintiff a video of J.A. simulating sex with another student in an imitation of the assault depicted in the video.

66. From early November of 2018, Defendants Board, Principal Monaghan, Dean Souza, Superintendent Larson, Assistant Principal Mitchell, Ms. Meyer, Mr. Jeffrey, Ms. McGann, and Ms. Ochoa, were well-apprised of Plaintiff's situation, through communications by Plaintiff, by Judy Doe, and through communications between and among one another and other school and Board employees.

67. Namely, Defendants were aware that Plaintiff had been sexually assaulted by J.A., that a video of the assault had been disseminated by J.A. to Glenbard West students, that Plaintiff's physical safety on school grounds had been threatened on several occasions, that Plaintiff was suffering pervasive highly gendered and sexualized harassment from numerous Glenbard West students on a daily basis, that the harassment and threats were meaningfully depriving Plaintiff of access to education, and that Plaintiff was suffering extreme distress as a result of the harassment.

68. Nonetheless, Defendants failed to investigate the sexual assault or the ongoing sexual harassment commensurate with their requirements under Title IX.

69. Defendants did not report the incident to the district Title IX coordinator, and discouraged Plaintiff from filing a complaint for sexual harassment or sexual violence.

70. Defendants did not discipline, transfer, or expel J.A., despite his ongoing harassment and threats.

71. Defendants made no changes to the educational environment to prevent the harassment or threats.

72. Defendants had the authority to take remedial action to correct the sex-based harassment.

73.     On March 15, 2019, Plaintiff's parents and administrators and teachers at Glenbard West had an annual IEP Conference to discuss Plaintiff's progress in school.

74.     During the academic year to date, Plaintiff had missed 164 class periods equaling approximately 23 total school days, had medical appointments during 34 class periods or a total of approximately 5 school days, was absent for 37 classes, and had spent 69 class periods at the school nurse.

75.     The Conference Summary also reported that Plaintiff had two incomplete grades from the first semester of the academic year and had failing grades in two classes from the second semester.

76.     The Conference Summary continued, "This semester in particular, [Plaintiff] has reported feeling hopeless and despondent in regards to her academic progress. [Plaintiff] is experiencing difficulty with motivation and feels very overwhelmed with daily tasks of getting to school, attending all classes, and completing work."

77.     Several of Plaintiff's teachers noted that Plaintiff's poor grades were related to these attendance issues, and one teacher stated that they had not seen Plaintiff "in weeks."

78.     These absences and academic difficulty are attributable to sexual harassment, and Plaintiff's fear for her personal safety.

79.     Plaintiff experienced severe anxiety as a result of the harassment.

80.     Plaintiff required mental health and trauma counseling and increased medication for anxiety and migraines to cope with the stress of attending Glenbard West.

81.     On April 30, 2019, Plaintiff and Judy Doe arranged for Plaintiff to transfer schools to avoid the continuing hostile environment she had experienced at Glenbard West.

82.     As a direct and proximate result of the harassing educational environment created by Defendants' deliberately indifferent response to the sexual assault and subsequent harassment experienced by Plaintiff, Plaintiff has suffered and continues to suffer psychological damage, emotional distress, lack of standing in her community, and damage to her reputation, and her future relationships have been negatively affected.

83.     Plaintiff has required ongoing counseling and medical care to address her anxiety caused by Defendants' conduct and the resulting harassing educational environment.

84.     Plaintiff was deprived of a normal childhood education due to Defendants' conduct and the resulting educational environment at Glenbard West.

85.     Plaintiff has also been damaged by missed educational opportunities and her future earning capabilities have been damaged by Defendants' conduct and the resulting hostile educational environment.

### COUNT I- VIOLATION OF TITLE IX (20 U.S.C. § 1681, *et seq.*)
### (*Jane Doe vs. Defendants Board, Monaghan, Larson, Souza, and Mitchell*)

86.     Plaintiff realleges and incorporates all proceeding paragraphs as though fully stated herein.

87.     The sex-based harassment articulated in Plaintiff's General Allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by Glenbard West.

88.     As a result of Defendants Board, Monaghan, Larson, Souza, and Mitchell's actions, Plaintiff was deprived of access to the educational opportunities and benefits provided by Glenbard West to other students who were not subject to such bullying and harassment.

89.     Defendants Board, Monaghan, Larson, Souza, and Mitchell created and/or subjected Plaintiff to a hostile educational environment in Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

      a. Plaintiff was a member of a protected class;
      b. she was subjected to sexual harassment by another student;
      c. she was subjected to harassment based on her sex; and
      d. she was subjected to a hostile educational environment created by the failure of Defendants Board, Monaghan, Larson, Souza, and Mitchell to properly investigate and/or address the harassment and bullying experienced by Plaintiff.

90.     Defendants Board, Monaghan, Larson, Souza, and Mitchell had actual knowledge of the sexual assault and the resulting harassment and bullying of Plaintiff created by their failure to investigate and discipline J.A. and other students for the harassment in a timely manner and to provide remedial measures consistent with its own policy and federal law.

91.     Defendants Board, Monaghan, Larson, Souza, and Mitchell failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

92.     Defendants Board, Monaghan, Larson, Souza, and Mitchell failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff.

93.     Defendants Board, Monaghan, Larson, Souza, and Mitchell persisted in its actions and inaction even after they had actual knowledge of the harm suffered by Plaintiff.

94.     Defendants Board, Monaghan, Larson, Souza, and Mitchell engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually harassed and parents of students who had been sexually harassed from seeking remedial measures.

95.     This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

96.     Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant Board's deliberate indifference to her rights under Title IX.

## COUNT II—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: SUBSTANTIVE DUE PROCESS
### *Jane Doe vs. All Defendants*)

97.     Plaintiff realleges and incorporates all proceeding paragraphs as though fully stated herein.

98.     At all material times, Plaintiff had a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

99.     At all relevant times Defendants were acting under color of state law.

100.    The actions and omissions of Defendants, as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

101.    The Board's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for Board employees and agents, including Defendants Monaghan, Larson, Souza, Mitchell, Meyer, Ochoa, McGann, and Jeffrey.

102.    The Board purports to follow a policy, outlined in the Glenbard West Handbook, that prohibits discrimination on the basis of sex, sexual harassment (including verbal or physical contact), and "intimidating, hostile, or offensive" sexualized conduct which has the effect of causing embarrassment or discomfort.

103.     The Board purposes to follow a policy, outlined in the Glenbard West Handbook, that prohibits bullying, intimidation, and harassment between students at the school or at school-related activities.

104.     This policy prohibits harassment "through the transmission of information from…an electronic device that is not owned, used, or leased by the School District or school if the bullying causes a substantial disruption to the educational process or orderly operation of a school."

105.     The Board purports to follow a policy, outlined in its Student Handbook, that requires:
   a. Students who violate the rights of others or Board policies will be subject to disciplinary measures;
   b. Prohibitions on bullying during any school–sponsored activity and while on school property; and
   c. Promptly investigating and addressing instances of bullying, intimidation, and harassment after reports of such conduct are received.

106.     Board policy was not followed by Defendant Board agents and employees in that:
   a. Students involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;
   b.  Investigations into the allegations by Jane Doe were not promptly initiated by the agents and/or employees of Defendant Board;
   c. Students who engaged in the harassment abuse, and other unlawful treatment of Jane Doe were allowed to continue participating in classes and school activity without reprimand; and/or
   d. Otherwise violated school policy.

107.     Board Policy, and Illinois law contained in the Bullying Prevention Act, was not being followed at Glenbard West High School during JANE DOE's attendance and was not followed in the case of JANE DOE's, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants were deliberately indifferent to Plaintiff and her subsequent deprivation of rights.

108.     Defendants' deliberate indifference to JANE DOE's safety, Board policy, and the law demonstrate an obvious need for training regarding harassment, bullying, discipline, reporting obligations, monitoring, policy, and legal requirements.

109.     Defendants had a duty to observe and monitor JANE DOE during school and they failed to do so.

110.     As a direct and proximate result of the acts and omissions set forth above, JANE DOE suffered and continues to suffer a deprivation of the rights secured to her by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

111.     As a direct and proximate result of the acts and omissions set forth above, JANE DOE suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety which has resulted in permanent damage to her social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

### COUNT III—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: PROCEDURAL DUE PROCESS
*(Jane Doe vs. All Defendants)*

112.     Plaintiff realleges and incorporates all proceeding paragraphs as though fully stated herein.

113.     JANE DOE has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

114.     At all relevant times Defendants were acting under color of state law.

115.     The actions and omissions of Defendants as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

116. The Board's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for Board employees and agents, including Defendants Monaghan, Larson, Souza, Mitchell, Meyer, Ochoa, McGann, and Jeffrey.

117. The Board purposes to follow a policy, outlined in the Glenbard West Handbook, that prohibits bullying, intimidation, and harassment between students at the school or at school-related activities.

118. This policy prohibits harassment "through the transmission of information from…an electronic device that is not owned, used, or leased by the School District or school if the bullying causes a substantial disruption to the educational process or orderly operation of a school."

119. The Board purports to follow a policy, outlined in its Student Handbook, that requires:
   a. Students who violate the rights of others or Board policies will be subject to disciplinary measures;
   b. Prohibitions on bullying during any school–sponsored activity and while on school property; and
   c. Promptly investigating and addressing instances of bullying, intimidation, and harassment after reports of such conduct are received.

120. Board policy was not followed by Defendant Board agents and employees in that:

   a. Students involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;
   b. Investigations into the allegations by Jane Doe were not promptly initiated by the agents and/or employees of Defendant Board;
   c. Students who engaged in the harassment abuse, and other unlawful treatment of Jane Doe were allowed to continue participating in classes and school activity without reprimand; and/or
   d. Otherwise violated school policy.

121.    Board Policy, and Illinois law contained in the Bullying Prevention Act, was not being followed at Glenbard West High School during JANE DOE's attendance and was not followed in the case of JANE DOE's, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants were deliberately indifferent to Plaintiff and her subsequent deprivation of rights.

122.    Defendants' deliberate indifference to JANE DOE's safety, Board policy, and the law demonstrate an obvious need for training regarding harassment, bullying, discipline, reporting obligations, monitoring, policy, and legal requirements.

123.    Defendants had a duty to observe and monitor JANE DOE during school and they failed to do so.

124.    As a direct and proximate result of the acts and omissions set forth above, JANE DOE suffered and continues to suffer a deprivation of the rights secured to her by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

125.    As a direct and proximate result of the acts and omissions set forth above, JANE DOE suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety which has resulted in permanent damage to her social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

## COUNT IV—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: EQUAL PROTECTION
### *(Jane Doe vs. All Defendants)*

126.    Plaintiff realleges and incorporates all proceeding paragraphs as though fully stated herein.

127.    JANE DOE has a clearly established right to equal protection under the law to similarly-situated individuals.

128.    At all relevant times Defendants were acting under color of state law.

129.    The actions and omissions of Defendants as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

130.    The Board's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for Board employees and agents, including Defendants Monaghan, Larson, Souza, Mitchell, Meyer, Ochoa, McGann, and Jeffrey.

131.    The Board purposes to follow a policy, outlined in the Glenbard West Handbook, that prohibits bullying, intimidation, and harassment between students at the school or at school-related activities.

132.    This policy prohibits harassment "through the transmission of information from…an electronic device that is not owned, used, or leased by the School District or school if the bullying causes a substantial disruption to the educational process or orderly operation of a school."

133.    The Board purports to follow a policy, outlined in its Student Handbook, that requires:

   a. Students who violate the rights of others or Board policies will be subject to disciplinary measures;
   b. Prohibitions on bullying during any school–sponsored activity and while on school property; and
   c. Promptly investigating and addressing instances of bullying, intimidation, and harassment after reports of such conduct are received.

134.    Board policy was not followed by Defendant Board agents and employees in that:

a. Students involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;
b. Investigations into the allegations by Jane Doe were not promptly initiated by the agents and/or employees of Defendant Board;
c. Students who engaged in the harassment abuse, and other unlawful treatment of Jane Doe were allowed to continue participating in classes and school activity without reprimand; and/or
d. Otherwise violated school policy.

135. Board Policy, and Illinois law contained in the Bullying Prevention Act, was not being followed at Glenbard West High School during JANE DOE's attendance and was not followed in the case of JANE DOE's, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants were deliberately indifferent to Plaintiff and her subsequent deprivation of rights.

136. Defendants' deliberate indifference to JANE DOE's safety, Board policy, and the law demonstrate an obvious need for training regarding harassment, bullying, discipline, reporting obligations, monitoring, policy, and legal requirements.

137. Defendants had a duty to observe and monitor JANE DOE during school and they failed to do so.

138. As a direct and proximate result of the acts and omissions set forth above, JANE DOE suffered and continues to suffer a deprivation of the rights secured to her by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

139. As a direct and proximate result of the acts and omissions set forth above, JANE DOE suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety which has resulted in permanent damage to her social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

## COUNT V—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983 (*MONELL* CLAIM)
### (*Jane Doe vs. Defendants Board, Monaghan, Larson, Souza, and Mitchell*)

140.    Plaintiff incorporates by reference all preceding paragraphs.

141.    The actions of the Board and its agents and employees resulted from, and were taken, pursuant to a *de facto* policy and widespread custom of not monitoring or protecting students on school grounds and at student events and subsequently not reporting, sufficiently investigating, or disciplining sexual assault, harassment, and bullying that occurs.

142.    This *de facto policy* and widespread custom of Defendant Board is implemented by Defendant Board and its agents, all acting under the color of law, who chose to violate Plaintiff JANE DOE's constitutional rights, without rightful authority of law.

143.    Prior to the time of the assault and harassment of JANE DOE, sexual assault and harassment between students was widespread and pervasive, despite reports of same to Defendants Board, Monaghan, Larson, Souza, and Mitchell by teachers and students.

144.    The existence of the *de facto* policy and widespread custom described above has been known or should have been known to supervisory and policy making officers and officials of Defendant Board for a substantial period of time.

145.    Despite their knowledge of the said illegal policy and practices, supervisory and policy-making officers and officials of the Defendant Board have not taken steps to determine said practices, have not disciplined or otherwise properly supervised the individual employees who engaged in said practices, have not effectively trained agents, including Defendants, with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policy and the practices described herein.

146.     The above actions and omissions by Defendants were deliberate and intentional and have resulted in violations of JANE DOE's rights to due process and equal protection, all in violation of the Fourteenth Amendment to the United States Constitution.

147.     By reason of the aforesaid actions, Defendant Board, Monaghan, Souza, and Mitchell's actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of JANE DOE and other similarly situated students, all in violation of her constitutional rights, and as a direct and proximate result thereof, she has sustained damages.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against Defendants BOARD, MONAGHAN LARSON, SOUZA, MITCHELL, MEYERS, OCHOA, McGANN, and JEFFREY as follows:

    a.  Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out-of-pocket expenses incurred in response to these circumstances;
    b.  Punitive damages;
    c.  Injunctive relief requiring Defendant Board to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment; appropriately respond to all conduct that may constitute sex-based harassment; and mitigate the effects of harassment and bullying including by eliminating any hostile environment that may arise from or contribute to it.
    d.  Statutory interest;
    e.  Costs; and
    f.  Reasonable attorney's fees.

### JURY DEMAND

Now comes the Plaintiff, JANE DOE, by and through her attorneys, Romanucci & Blandin, LLC, and demands a trial by jury.

Respectfully submitted,

By: ____/s/ Nicolette A. Ward_____

Attorney for Plaintiff

Antonio M. Romanucci
Nicolette A. Ward
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago IL, 60654
Telephone: 312-458-1000
Fax: 312-458-1004
aromanucci@rblaw.net
nward@rblaw.net