UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF EDUCATION OF GLENBARD TOWNSHIP HIGH SCHOOL DISTRICT 87; PETER MONAGHAN, in his individual and official capacity; DAVID LARSON, in his individual and official capacity; MICHAEL SOUZA, in his individual and official capacity; CHRISTOPHER MITCHELL, in his individual and official capacity; AMANDA MEYER, in her individual and official capacity, LISSETE OCHOA, in her individual and official capacity; ELIZABETH MCGANN, in her individual and official capacity; and ANDREW JEFFREY, in his individual and official capacity, <br><br> Defendants. | No. 21 C 04909 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jane Doe alleges that she experienced pervasive sex-based harassment at her high school, resulting in a deprivation of access to educational opportunities and the violation of her constitutional rights. She filed suit under Title IX and 42 U.S.C. § 1983, naming as Defendants the governing Board of Education and several administrators and staff members from her high school. Plaintiff alleges Defendants failed to properly investigate and/or address the harassment she faced, in violation of Title IX and with deliberate indifference to her Equal Protection and

1

Due Process rights. Defendants have moved to dismiss the complaint for failure to state a claim. For the reasons set forth below, that motion is denied in part and granted in part.

## Background

At the time of the alleged events, Plaintiff was a minor female attending Glenbard West High School. On September 15, 2018, she attended a party with another individual, "J.A.," with whom she was in a relationship. At the party, J.A. urged Plaintiff to take a pill he claimed was Xanax. After taking the pill, Plaintiff began to experience altered perception and periods of memory "blackout." Later that evening, Plaintiff and J.A. arrived at J.A.'s house. Plaintiff awoke several hours later with limited memory of the prior night. She soon received a video via the SnapChat messaging app that depicted J.A. sexually penetrating her. Plaintiff had no memory of consenting to or participating in any sexual activity the night of September 15. J.A. subsequently sent the video to several other students at Glenbard West.

A few days later, Plaintiff told defendant Amanda Meyer, a school psychologist, about the incident and dissemination of the video during a counseling session. Meyer told Plaintiff the event would "blow over" and did not immediately report or investigate the assault.

About two weeks after the incident, after Plaintiff had spoken to other students about the assault, J.A. sent Plaintiff a SnapChat message that said, "So you're putting a rape charge on me." R. 1 ¶ 46. J.A. later sent a text message to Plaintiff that said, "Yo listen never speak my name …I do not give to fucks about the deans I will stomp these kids throats." R. 1 ¶ 47.

2

Plaintiff told her mother (referred to herein as "Judy Doe") about the incident and the two of them reported it to the Glen Ellyn Police Department. The following day, Judy notified defendant Michael Souza, the dean of students at Glenbard West, about the incident and J.A.'s subsequent dissemination of the video. Souza in turn notified the Board of Education, board superintendent David Larson, Glenbard West principal Peter Monaghan, and assistant principal Christopher Mitchell.

According to the complaint, after Plaintiff and her mother disclosed the assault and video to the police and school administrators, the harassment began to escalate. J.A. began to physically position himself in areas Plaintiffs frequented for classes and extracurriculars. Judy reported to Souza that J.A. was "attempting to physically intimidate Plaintiff for reporting her assault and that Plaintiff felt unsafe at school." R. 1 ¶ 54. Souza related this conversation to the other Defendants.

Plaintiff further alleges that she was "frequently called by gendered and sexually-charged language, including 'twat' and 'whore' by other Glenbard West students, and was accused of having fabricated the assault." R. 1 ¶ 56. She received photos and videos from other students that depicted J.A. and other students mocking Plaintiff for reporting the assault and describing her with sexualized terms. Plaintiff received another video depicting J.A. simulating sex with another student in an imitation of the assault.

Plaintiff also alleges that she received threats to her physical safety. J.A. threatened to beat up Plaintiff and a friend to whom she had reported the assault,

3

and another student told Plaintiff they would throw a brick at her vehicle if she came to school.

Plaintiff claims that all Defendants were well-apprised of her situation but nonetheless failed to investigate either the assault or the ongoing sexual harassment as required under Title IX. Specifically, Plaintiff alleges that Defendants did not report the incident to the district Title IX coordinator and discouraged Plaintiff from filing a complaint for sexual harassment or sexual violence. Defendants also took no disciplinary action against J.A. and made no changes to the educational environment to prevent the harassment or threats.

Plaintiff missed a substantial number of class periods during the academic year, which she attributes to the sexual harassment and fear for her personal safety. She also alleges experiencing severe anxiety because of the harassment, requiring mental health counseling and medication. Eventually, Plaintiff transferred to another school.

Plaintiff's complaint asserts five claims. Counts I-VI allege violations of Plaintiff's rights under Title IX, substantive due process, procedural due process, and the Equal Protection Clause of the Fourteenth Amendment, respectively. R. 1 ¶¶ 86-139. Count V asserts a *Monell* claim against the Board of Education and school officials Monaghan, Larson, Souza, and Mitchell. R. 1 ¶¶ 140-47.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled

to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Analysis

### I. Count I (Title IX)

"Title IX provides that: 'No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) (quoting 20 U.S.C. § 1681(a)). A gender discrimination claim under Title IX may be either "direct" or "indirect." *Id*. A direct claim alleges that the school itself discriminated against the plaintiff on the basis of sex, while an indirect claim may be

5

based on "student-on-student harassment that is so severe that the harassment functionally excludes a student from school activities on the basis of sex." *Id.*; *see also Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (recognizing that school administrators "may be liable for their deliberate indifference to known acts of peer sexual harassment"). Plaintiff's claims here are indirect, because they concern the school officials' alleged failure to prevent known harassment being carried out by other students.

"[T]he Supreme Court has interpreted both Title VI and Title IX to impose a demanding standard for holding schools and school officials legally responsible for one student's mistreatment of another." *Doe v. Galster*, 768 F.3d 611, 613 (7th Cir. 2014). "First, the school or school officials must have had actual knowledge of sex-based harassment." *Jauquet*, 996 F.3d at 808. "Second, the harassment must have been 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Id.* (quoting *Galster*, 768 F.3d at 614). "Third, the school must have been deliberately indifferent to the harassment." *Id.* (citing *Davis*, 526 U.S. at 648). A school will be found "deliberately indifferent" only if its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

Defendants argue that the allegations in Plaintiff's complaint do not plausibly allege sex-based harassment and thus are not actionable under Title IX. *See Doe v. Univ. of Chicago*, 2017 WL 4163960, at *8 (N.D. Ill. Sept. 20, 2017). According to

Defendants, Plaintiff has alleged only that she was harassed because she reported the sexual assault, not because of her sex. The Court disagrees.

For starters, even if Plaintiff's claim was based *solely* on harassment she received for reporting her assault, this may be sufficient to state a claim under Title IX. "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). A school can be liable under Title IX for failing to take reasonable action to stop peer harassment after a student reports a sexual assault. *See, e.g.*, *Reed v. S. Ill. Univ.*, 2020 WL 3077186, at *4 (S.D. Ill. June 10, 2020); *Doe v. Blackburn Coll.*, 2012 WL 640046, at *7 (C.D. Ill. Feb. 27, 2012).

But beyond that, Defendants' characterization takes too narrow a view of Plaintiff's allegations and ignores relevant context. Plaintiff alleges that after the assault, she was harassed with gendered and sexualized insults. She was also sent videos depicting her alleged assailant reenacting the assault on another student, and others in which students joined him in denigrating her. The fact that J.A. (a male) allegedly suffered no backlash from his peers while Plaintiff (a female) was threatened and insulted also permits an inference of gendered motivation, as it leans into gender stereotypes in which women are criticized for engaging in sexual behavior of any kind and ostracized for reporting abuse. Courts considering similar circumstances have likewise found actionable Title IX claims. *See, e.g.*, *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1310 (10th Cir. 2020) (holding that

7

allegations of harassment including sexually charged insults, "rape jokes" about plaintiff's assailant, and comments about sexual consent were sufficient to allege sex-based discrimination); *Doe v. E. Haven Bd. of Educ.*, 200 F. App'x 46, 48 (2d. Cir. 2006) ("A reasonable fact-finder could conclude that, when a fourteen-year-old girl reports a rape and then is persistently subjected by other students to verbal abuse that reflects sex-based stereotypes *and* questions the veracity of her account, the harassment would not have occurred but for the girl's sex.").

Defendants' cited case, *Doe v. University of Chicago*, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017), is readily distinguishable from this one. There the plaintiff brought a Title IX claim after two female students accused him of sexual assault and filed a complaint against him for sexual misconduct. *Id.* at *7. The court found the plaintiff had failed to allege harassment based on sex, noting a general agreement among courts that "a false accusation of sexual assault is not, without more, harassment based on sex, notwithstanding the sexual content of the accusation." *Id.* As explained above, the allegations in this case are not so limited—they allege conduct other courts have found to constitute sex-based discrimination. The Court therefore finds that Plaintiff has adequately alleged sex-based discrimination that is actionable under Title IX.

## II. Count II (Substantive Due Process)

Defendants do not dispute that students at public schools have protected liberty and property interests in receiving an education free from invasion of their physical safety. R. 14, at 8; *see also Doe v. Sch. Dist. U-46* ("*U-46*"), 557 F. Supp. 3d

8

860, 871-72 (N.D. Ill. 2021). However, Defendants argue that they had no duty under the Due Process Clause to protect Plaintiff from harassment by other students.

The purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *U-46*, 557 F. Supp. 3d at 872 (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989)). "Accordingly, the Clause generally does not impose upon the state a duty to protect individuals from harm by private actors." *D.S. v. East Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (2015).

Here, no school official is alleged to have participated in Plaintiff's harassment—Plaintiff only claims that they failed to respond appropriately to harassment carried out by other students. This would seem to foreclose liability under the Due Process Clause. However, Plaintiffs cite to several cases discussing the "state-created danger exception" to the general rule. That exception applies "when a state actor's conduct 'creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been.'" *Id.* (quoting *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993)).

Within the education context, the state-created danger exception has ordinarily been applied when a state actor is directly responsible for the alleged harassment. *See, e.g., Sandra T.E. v. Sperlik*, 639 F. Supp. 2d 912, 921-23 (N.D. Ill. 2009) (denying summary judgment on substantive due process claim where evidence showed school officials tacitly approved sexual abuse being perpetuated by a teacher against students). In contrast, court have found the exception inapplicable when the

9

harassment is carried out by other students. For example, in *U-46*, the plaintiff asserted a substantive due process claim against school officials for failing to stop bullying and sexual harassment by other students on the school bus. 557 F. Supp. 3d at 872-73. The court found that Plaintiff had not alleged an "affirmative action" by school officials that "create[d] or increase[d]" the danger, noting that "[g]enerally, for the exception to apply, the victim must be 'safe before the state intervenes and unsafe afterward.'" *Id.* at 873 (quoting *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 548 F.3d 595, 598 (7th Cir. 2008)); *see also D.S.*, 799 F.3d at 798-99 (granting summary judgment on substantive due process claim where bullying was largely carried out by other students and evidence of teachers' participation was very limited).

This latter category of cases is more akin to the situation here. Plaintiff does not allege that Defendants took any affirmative action that created or increased the danger of sexual harassment—indeed, the crux of her complaint is that Defendants took no action at all. "[T]he exception's requirement that the affirmative action 'create or increase' danger 'must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect.'" *U-46*, 557 F. Supp. 3d at 873 (quoting *Doe v. Vill. Of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015)). The Court concludes that Plaintiff has not sufficiently alleged that Defendants owed her a duty to prevent peer-on-peer harassment under the Due Process Clause. Count II in her complaint must therefore be dismissed without prejudice.

### III. Count III (Procedural Due Process)

Plaintiff's procedural due process claim likewise fails because she has not alleged that Defendants themselves deprived her of a protected interest. *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998) ("The touchstone of due process … is 'protection of the individual against arbitrary action of government.'"). Indeed, mapping the procedural due process framework onto her allegations is difficult because that test concerns whether the state, *in depriving a person of a protected right*, has provided constitutionally adequate process. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."). Plaintiff's complaint lacks allegations that Defendants deprived her of a constitutional right—it follows that she has not stated a claim that they did so without sufficient process.[1] Accordingly, Plaintiff's procedural due process claim in Count III is dismissed without prejudice.

### IV. Count IV (Equal Protection)

Defendants assert Plaintiff has failed to allege the essential elements of an equal protection violation and instead merely restates the allegations from her other claims. Plaintiff's only response is that her equal protection claim is "due to be

---

[1] The Court also notes that Plaintiff's due process claim appears to focus largely on Defendants' alleged failure to comply with internal policies governing discipline and harassment, matters which are typically "irrelevant to the due process inquiry." *Simonsen v. Bd. of Educ.*, 2002 WL 230777, at *3 n.14 (N.D. Ill. Feb. 14, 2002).

amended, rather than dismissed outright." The Court takes this as a concession that that her equal protection claim is deficient as it stands and therefore dismisses Count IV without prejudice.

## V. Count V (*Monell* Liability)

*Monell* liability cannot be imposed against a municipal corporation absent an underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because the Court has dismissed each of Plaintiff's constitutional claims, no basis for *Monell* liability remains. Count V is therefore dismissed without prejudice.

## VI. Claims Against Individual Defendants

Defendants move to dismiss all claims against individual defendants Monaghan, Larson, Mitchell, Ochoa, McGann, and Jeffrey for failure to plead personal involvement and for improper "group pleading." The Court need not delve into this issue, however, because the only claim remaining in Plaintiff's complaint arises under Title IX, and individuals are not proper defendants in such a claim. *See Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019-21 (7th Cir. 1997). While Plaintiff's complaint also names the individual defendants in their official capacities, this is redundant with her claim directly against the Board of Education. *See id.* at 1021 n.3. Accordingly, the Court dismisses all claims against all the individual defendants without prejudice.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss [R. 14] is denied in part and granted in part. The Court denies the motion as to Plaintiff's Title IX claim

against the Board of Education in Count I. The Court grants Defendants' motion to dismiss as to all other claims in Counts II through V and further dismisses all claims against the individual defendants. Dismissal of all claims is without prejudice to Plaintiff seeking leave to amend. No later than twenty-one (21) days from the entry of this order, Plaintiff may file a proposed amended complaint. Any proposed amended complaint should be accompanied by a redline copy showing changes from the original complaint, as well as a brief of no more than five (5) pages explaining how the proposed amended complaint cures the deficiencies identified in this opinion.

Within fourteen (14) days of the entry of this order, the parties shall submit a joint status report proposing a discovery schedule.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: July 1, 2022